Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| DANIEL RIVERA COLÓN<br><br>PETICIONARIO<br><br>v.<br><br>SUPERINTENDENTE PEDRO SANTOS Y OTROS<br><br>RECURRIDO | TA2025CE00287 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Guayama<br><br>Caso Núm. GM2021CV00381<br><br>Sobre:<br>Daños y Otros |

Panel integrado por su presidenta, la Juez Lebrón Nieves, el Juez Pagán Ocasio y la Jueza Álvarez Esnard.

Pagán Ocasio, juez ponente

## SENTENCIA

En San Juan, Puerto Rico, a 4 de septiembre de 2025.

### I.

El 17 de julio de 2025, el señor Daniel Rivera Colón (señor Rivera Colón o peticionario), quien se encuentra confinado bajo la custodia del Departamento de Corrección y Rehabilitación (DCR), presentó, por derecho propio y de forma *pauperis*, una *Apelación.* Este recurso fue acogido por este foro apelativo intermedio como *Certiorari* debido a que la determinación cuya revisión se solicita corresponde a una *Resolución Interlocutoria.*

Junto con este recurso y en la misma fecha, el peticionario presentó una *Solicitud y declaración para que se exima de pago de arancel por razón de indigencia* en la que solicitó que le autizáramos a litigar como indigente por razón de estar privado de su libertad.

Autorizamos al recurrente a litigar *in forma pauperis* y por derecho propio.

En el recurso ante nuestra consideración, el señor Rivera Colón suplicó que revoquemos la *Resolución Interlocutoria,* emitida

el 30 de junio de 2025 y notificada el 1 de julio de 2025 por el Tribunal de Primera Instancia, Sala Superior de Guayama (TPI o foro primario).[1] Mediante ésta, el TPI resolvió: "Nada que proveer. Existe Sentencia de Paralización". En síntesis, el peticionario alegó violación de sus derechos civiles al no asignársele un abogado de oficio en el caso civil GM2021CV00381, sobre daños y perjuicios.

Debemos mencionar que la Regla 7 (B) (5) del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, pág. 15, 215 DPR ___ (2025), confiere a este foro la facultad para prescindir de escritos, en cualquier caso, ante su consideración, con el propósito de lograr su más justo y eficiente despacho. Dadas las particularidades de este caso, prescindimos de la comparecencia del Ministerio Público.

En adelante, pormenorizamos los hechos procesales más relevantes para la atención de la presente petición de *Certiorari*.

**II.**

El caso de marras tiene su génesis el 30 de abril de 2021, cuando el señor Rivera Colón presentó una *Demanda*, por derecho propio, en contra del Superintendente Pedro Santos de la Institución Carcelaria Ponce 1,000, y otros.[2] En síntesis, el peticionario incoó su petición en daños y perjuicios pues alegó que, el 24 de diciembre de 2020, personal de la Institución Ponce 1,000, le propinó una paliza en su celda durante un registro. Manifestó que los oficiales que intervinieron le solicitaron de manera hostil y amenazante que entregara la silla de ruedas que utiliza, según indicó, por recomendación médica. Explicó que, a causa de un empujón y de los golpes que recibió, fue llevado a una sala de emergencia para atención médica. Indicó que los daños físicos, emocionales y

---

[1] Véase Anejo 1 del Apéndice del recurso en el expediente digital del caso en el Sistema Unificado de Manejo y Administración de Casos del Tribunal de Apelaciones (SUMAC-TA).

[2] Entrada Núm. 1 del expediente digital del caso en el Sistema Unificado de Manejo y Administración de Casos del Tribunal de Primera Instancia (SUMAC-TPI).

angustias mentales se traducen en la falta de sueño que sufre en las noches por preocupaciones sobre el incidente. Aseguró que notificó formalmente a los encargados de la institución correccional mediante la presentación de un reporte sobre la situación. En su *Demanda*, solicitó una compensación de $75,000 por los daños alegados y para su rehabilitación.

El 12 de agosto de 2021, el señor Pedro Santos, en su capacidad personal, solicitó la desestimación de la acción incoada por el peticionario.[3] Comenzó su escrito invocando la ley federal "Puerto Rico Oversight, Management, and Economic Stability Act" (PROMESA) 48 U.S.C. sec. 2101 *et seq.* Arguyó que el señor Rivera Colón deja de exponer una reclamación que justifique la concesión de un remedio. Además, indicó que al recurrido le cobija la doctrina de inmunidad condiciona del funcionario público.

El 9 de septiembre de 2021, mediante *Orden*, el foro primario determinó que se le estaría asignando un abogado de oficio al peticionario.[4]

El 29 de octubre de 2021, el abogado de oficio asignado al peticionario solicitó la renuncia a la representación legal.[5] Explicó que ya no se dedicaba al litigio activo, por lo que no podría representar adecuadamente los intereses del peticionario.

El 5 de noviembre de 2021, mediante *Orden*, el Tribunal declaró *No Ha Lugar* la moción del abogado asignado al peticionario.[6]

Luego de varios trámites procesales, el 26 de enero de 2022, el foro primario emitió y notificó una *Orden* para relevar al abogado

---

[3] Entrada Núm. 17 SUMAC-TPI.
[4] Entrada Núm. 22 SUMAC-TPI. Notificada y archivada digitalmente en autos el 10 de septiembre de 2021.
[5] Entrada Núm. 25 SUMAC-TPI. *Moción solicitando relevo de representación legal.*
[6] Entrada Núm. 26 SUMAC-TPI. Notificada y archivada digitalmente en autos el 8 de noviembre de 2021.

de oficio del peticionario.[7] Consecuentemente, el TPI designó un nuevo abogado de oficio al peticionario.[8]

Tiempo después, el 8 de abril de 2022, el DCR presentó la moción de *Aviso de Injunction paralizando la litigación del presente caso y sobre el requisito de presentar una solicitud de gastos administrativos ante el Tribunal de Título III*.[9] En síntesis, detalló la falta de jurisdicción del TPI en virtud de la paralización automática de los procesos litigiosos, como el de autos, ante el Estado Libre Asociado de Puerto Rico según establecido por la ley PROMESA.

El 15 de agosto de 2022, el TPI, mediante *Sentencia*[10], ordenó la paralización de los procedimientos y su archivo administrativo, sin perjuicio, sin imposición de costas y honorarios de abogado. El foro primario fundamentó su decisión en aspectos ligados a la precitada ley PROMESA[11] y el Código de Quiebras[12] de Estados Unidos. Resolvió que se reservaría la jurisdicción para decretar la reapertura del caso, a petición de parte, en caso de que dicha orden de paralización fuera dejada sin efecto.

Luego de varias mociones presentadas por el señor Rivera Colón en donde rogó representación legal, el 19 de febrero de 2025, el peticionario nuevamente presentó una *Solicitud para la asignación de representación legal de oficio*.[13]

---

[7] Entrada Núm. 37 SUMAC-TPI.

[8] Entrada Núm. 38 SUMAC-TPI. *Orden para la Asignación de Abogado (s) de Oficio o Abogado (a) Auxiliar.*

[9] Entrada Núm. 41 SUMAC-TPI.

[10] Entrada Núm. 43 SUMAC-TPI.

[11] El foro primario tomó providencial judicial del *Order and Judgment Confirming Modified Eighth Amended Title III Joint Plan of Adjustment of the Commonwealth of Puerto Rico, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Public Buildings Authority*, emitido el 18 de enero de 2022 por el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico bajo el Título III de la ley federal "Oversight, Management and Economic Stability Act", conocida como la Ley PROMESA por sus siglas en inglés, 48 U.S.C. sec. 2101 *et. seq.*

[12] El foro primario se amparó en las Secciones 362 y 922 del Código de Quiebras de los Estados Unidos, 11 U.S.C. secs. 362 (a), 922 (a), 48 U.S.C. sec. 2161 (a).

[13] Entrada Núm. 48 SUMAC-TPI.

El 17 de marzo de 2025, el señor Rivera Colón notificó al foro primario que estaba bajo custodia de una nueva institución correccional localizada en Bayamón, Puerto Rico.[14]

Posteriormente, el 29 de mayo de 2025, el señor Rivera Colón dio seguimiento a sus peticiones de asignación de abogado de oficio mediante su *Moción en solicitud de estatus*.[15] Hizo un recuento de sus escritos presentados ante el foro primario para intentar conocer si la asignación de abogado se había realizado.

El 30 de junio de 2025, el TPI, resolvió mediante *Resolución Interlocutoria*:[16] "Nada que proveer. Existe Sentencia de Paralización".

Inconforme con la determinación del TPI, el 17 de julio de 2025, el señor Rivera Colón acude ante nos e imputó al foro primario los siguientes errores:

> Primer error: Err[ó] en la apre[c]iación de lo que señala la [C]onstitución "Debido proceso de ley – Art II, secc. 11 (Pág.10)"[.]

> Segundo error: Err[ó] al no suspender mi permiso para autorrepresentarme.

Conscientes de que los asuntos de jurisdicción deben ser atendidos con preferencia, procederemos a pormenorizar las normas jurídicas aplicables.

### III.

### A.

La jurisdicción ha sido definida como "el poder o autoridad de un tribunal para considerar y decidir casos y controversias". ***Shell v. Srio. Hacienda,*** 187 DPR 109, 122 (2012). Reiteradamente, nuestro Tribunal Supremo ha expresado que los tribunales tienen siempre la obligación de ser celosos guardianes de su propia

---

[14] Entrada Núm. 49 SUMAC-TPI.

[15] Entrada Núm. 51 SUMAC-TPI.

[16] Véase Anejo 1 del apéndice del recurso en el expediente digital SUMAC-TA. También, véase, entrada núm. 52 SUMAC-TPI. Notificada y archivada digitalmente en autos el 1 de julio de 2025.

jurisdicción, toda vez que sin jurisdicción no están autorizados a entrar a resolver los méritos de un recurso. Íd., págs. 122-123. En consecuencia, los asuntos de jurisdicción son materia privilegiada y deben ser resueltos con preferencia. ***Fuentes Bonilla v. ELA et al.,*** 200 DPR 364, 372 (2018). Así, cuando un tribunal no tiene autoridad para atender el recurso, solo tiene jurisdicción para así declararlo y desestimar el caso sin entrar en los méritos de la controversia. ***Mun. de San Sebastián v. QMC Telecom,*** 190 DPR 652, 660 (2014).

De ordinario, la falta de jurisdicción posee las siguientes características: (1) no es susceptible de ser subsanada; (2) las partes no pueden conferírsela voluntariamente al tribunal, ni este puede arrogársela; (3) conlleva la nulidad de cualquier dictamen emitido; (4) impone a los tribunales el deber obligatorio de auscultar su propia jurisdicción; (5) impone a los tribunales apelativos el deber de examinar la jurisdicción del foro inferior; y (6) puede presentarse en cualquier etapa del procedimiento, a instancia de partes o por el propio tribunal. ***González v. Mayagüez Resort & Casino,*** 176 DPR 848, 855 (2009).

A tenor con lo anterior, la Regla 83 (C) del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, págs. 109-110, 215 DPR ___ (2025), nos autoriza a desestimar un recurso por falta de jurisdicción.

**B.**

Con miras de resolver la crisis económica de Puerto Rico, el Congreso de Estados Unidos (Congreso) aprobó el *Puerto Rico Oversight, Management, and Economic Stability Act*, mejor conocido como PROMESA, 48 USCA sec. 2101 et seq. (Ley PROMESA). Esta legislación busca brindar al ELA, sus agencias e instrumentalidades acceso a los procesos judiciales de reestructuración de la deuda. R. Emanuelli Jiménez, PROMESA, 1ra ed., Puerto Rico, Ed. SITUM,

2017, 48. Particularmente, el Título III de Ley PROMESA permite que el Gobierno de Puerto Rico y ciertas entidades (*covered entities*) puedan hacer una petición de quiebra por conducto de la Junta de Supervisión Fiscal (*Financial Oversight and Management Board*). Ley PROMESA, *supra*, sec. 2162. Por esto, el Congreso incorporó ciertas disposiciones de la Ley de Quiebras federal. En específico, el Título III de la Ley PROMESA, en su Sección 301 (a), **incorporó las Secciones 362** y **922** del Título 11 del Código Federal de Estados Unidos, conocido como el Código de Quiebras de Estados Unidos, 11 USC secs. 362 y 922. Ambas Secciones regulan lo relacionado a las paralizaciones automáticas de pleitos contra el deudor y su propiedad. 48 USC sec. 2161 (a). ***Lacourt Martínez et al. v. JLBP et al.,*** 198 DPR 786, 787 (2017).

A esos efectos, la Sección 362 (a) del Código de Quiebras, supra, establece lo siguiente:

a) ...

(1) the **commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding** against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

(7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and

(8)    the commencement or continuation of a proceeding before the United States Tax Court concerning a tax liability of a debtor that is a corporation for a taxable period the bankruptcy court may determine or concerning the tax liability of a debtor who is an individual for a taxable, period ending before the date of the order for relief under the title.

11 USC sec. 362 (Énfasis Nuestro)

De la misma manera, la Sección 922 (a)(1) del Código de Quiebras establece:

(a) A petition filed under this chapter operates as a stay, in addition to the stay provided by section 362 of this title, applicable to all entities, of --

(1) the commencement or continuation, including the issuance or employment of process, of a **judicial, administrative, or other action or proceeding** against an officer or inhabitant of the debtor that seeks to enforce a claim against the debtor;

[...]

11 USC sec. 922 (a)(1) (Énfasis Nuestro)

Es decir, de acuerdo con la sección 362 (a) de la Ley de Quiebras, *supra* sec. 362 (a)(1) una vez se presenta la petición de quiebra se activa una paralización **sobre todas las acciones civiles, administrativas o de otra índole** que se intenten iniciar o se hayan iniciado contra la entidad protegida con anterioridad a la fecha de la aludida petición. A su vez, la sección 922(a)(1) de la Ley de Quiebras, *supra*, establece que igualmente queda paralizado el inicio o continuación de **toda acción judicial, administrativa o cualquier otro procedimiento** en contra de un oficial o habitante del deudor que pretenda ejercer un reclamo en contra del deudor.

En cuanto a la paralización automática, el Tribunal Supremo ha resuelto que no resulta necesaria una notificación formal de la presentación de la petición de quiebra para que surja el efecto de la paralización automática. ***Peerless Oil v. Hnos. Torres Pérez,*** 186 DPR 239, 255 (2012). Por consiguiente, la presentación de la petición de quiebra impide "el comienzo o la continuación de cualquier acción judicial o administrativa en contra del deudor

pendiente o que pudo comenzar antes del inicio de la petición de quiebra". Íd.

De otra parte, el Tribunal Supremo ha expresado en varias ocasiones que la paralización automática es una de las protecciones más básicas que el legislador estadounidense incluyó en el Código de Quiebras para los deudores que se acogen a éste. ***Peerless Oil v. Hnos. Torres Pérez,*** supra, 255 (2012); ***Marrero Rosado v. Marrero Rosado,*** 178 DPR 476, 490 (2010). De ese modo, se intenta preservar el caudal del deudor para que se pueda llevar un proceso ordenado de reorganización. ***Depto. de Hacienda v. COTIARI,*** 203 DPR 1049, 1055 (2020). Los efectos de esta se prolongan a lo largo del procedimiento de quiebra, desde la presentación de la petición hasta que recae la sentencia final. ***Marrero Rosado v. Marrero Rosado,*** supra, 491. Provoca además que los tribunales estatales queden privados de jurisdicción automáticamente, e incluso, es tan abarcadora que paraliza litigios que tienen poco o nada que ver con la situación financiera del deudor. Íd.

Recientemente, en ***Morales Pérez v. Policía de PR,*** 200 DPR 1, 3-5 (2018), resuelto por ***Resolución***, el Juez Asociado Martínez Torres en su Voto Particular planteó:

> El efecto de la paralización automática es detener los pleitos que involucren reclamaciones monetarias y que se estén llevando contra el deudor al momento de radicar la petición de quiebra o aquellas que hayan podido comenzar antes de la presentación de la petición de quiebra. De otro modo, las reclamaciones que prosiguieran su curso en los tribunales tendrían una preferencia que la ley no les concede, pues cobrarían antes que los demás deudores y, a diferencia de estos, podrían resarcir su deuda de forma íntegra. Todo ello empequeñecería indebidamente el caudal del quebrado, en perjuicio suyo y de los demás acreedores. Para evitar esto, la paralización opera de forma automática en los pleitos, no importa la causa de la reclamación monetaria. [...]Esta permanecerá hasta que culmine el proceso o hasta que el tribunal federal la levante parcial o totalmente, de acuerdo al procedimiento establecido en la Sec. 362(d) de la Ley de Quiebras federal. [...] **En caso de que las partes entiendan que se debe levantar la paralización, deberán acudir al tribunal federal para que ese foro levante parcial o totalmente la paralización**. (Énfasis suplido.) (Citas omitidas.)

**IV.**

En el caso de marras, el señor Rivera Colón solicita la revisión de una *Resolución Interlocutoria* emitida por el TPI, en un caso incoado por él en el que reclama una compensación económica por concepto de daños y perjuicios. En esa determinación, el foro primario resolvió que no tenía nada que proveer, toda vez, que existe una sentencia de paralización.

De un análisis objetivo, sereno y cuidadoso del expediente del caso y del recurso radicado, surge que, debido a la paralización automática, el TPI actuó correctamente al emitir el dictamen recurrido. Mientras no se deje sin efecto la orden de paralización emitida por virtud de la quiebra radicada por el Gobierno de Puerto Rico, ante el Tribunal Federal, el foro primario, al igual que este foro intermedio, carecemos de jurisdicción para intervenir en un caso que se encuentra paralizado, por provisión legal federal.

Por lo que, en virtud de la Regla 83 (C) del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, pág. 110, 215 DPR ___ (2025), resolvemos que corresponde abstenernos de ejercer nuestra función revisora y rechazar intervenir en la determinación del TPI. Por ende, concluimos que carecemos de jurisdicción para intervenir en la **adjudicación** del caso.

**V.**

Por los fundamentos expuestos, se *desestima* la petición de *certiorari*, por falta de jurisdicción para atenderlo.

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones. Notifíquese a las partes. El DCR deberá entregar copia de la presente *Sentencia* al recurrente en cualquier institución donde se encuentre el confinado.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones